ATLANTER BAILEY v. J. P. FERGUSON AND W. T. GRANT COMPANY.

(Filed 22 January, 1936.)

**Assault A c—Question of whether defendants used excessive force in protecting their property held for jury upon conflicting evidence.**

Evidence for plaintiff tended to show that, while a customer in the corporate defendant's store, she picked up certain merchandise, intending to buy it, that while waiting for a clerk to give it to, for wrapping, she was called to the front door of the store, and that while there she was seized by the individual defendant and a policeman procured by him, forced to return to the store and submit to a search by saleswomen, who handled her roughly. Evidence for the defendants tended to show that the individual defendant gently tapped plaintiff on the shoulder as she was walking down the street with the merchandise concealed about her person, and asked her to return to the store, which she voluntarily did, that she offered to pay' for the merchandise "and stop this mess," and voluntarily asked that she be searched to determine that she had no other articles. *Held:* The conflicting evidence should have been submitted to the jury on the question of whether defendants used excessive force under the circumstances in the protection of their property.

DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from judgment of nonsuit entered by *Small, J.,* at June Term, 1935, of WAYNE. Reversed.

*George E. Hood for plaintiff, appellant.*
*Dickinson & Bland for defendants, appellees.*

SCHENCK, J. This was a civil action to recover damages, both compensatory and punitive, alleged to have been caused by an assault and battery committed upon the plaintiff by the defendant Ferguson, while acting within the scope of his agency and employment by the defendant W. T. Grant Company.

The evidence of the plaintiff tended to show that she went into the store of the corporate defendant on West Walnut Street in the city of Goldsboro to do some shopping, and while in the store she picked up a box of shoe polish and a pair of hose, intending to have them wrapped and to pay for them, that before she was able to find a clerk to wrap the articles she was called to the front door of the store by some friends who were making inquiry as to the whereabouts of her husband, and that she went to the door to look for her husband, still having the polish and hose in her hand and across her arm in plain view, and while she was standing in the front door of the store the defendant Ferguson and a policeman, for whom he had sent, grabbed the plaintiff by each arm and

took her some 50 or 75 feet to the back end of the store to the foot of the stairway, and called two women clerks and told them to take the plaintiff upstairs and search her, and that the defendant Ferguson shoved her upstairs, and the two women clerks took her upstairs and, in searching her, pulled off her coat and hat and ran their hands all over her clothes; that the plaintiff was forced against her will to go upstairs and submit to being searched, and that the women clerks handled her roughly and pulled her clothes off, "just snatched them off." The plaintiff testified that she at all times had the money to pay for and at all times intended to pay for the shoe polish and hose, and that these were the only articles gotten by her in the store.

The evidence of the defendants was in sharp conflict with that of the plaintiff. It tended to show that the plaintiff had the shoe polish and hose concealed about her person, and had taken them outside of the store, and was going down the street with them when the defendant Ferguson overtook her and gently tapped her shoulder to attract her attention, and asked her to return to the store, and that she voluntarily returned and offered to pay for the polish and hose "and stop this mess," and of her own volition asked to be searched that it might be ascertained that she had no other articles, and that neither Ferguson or any other employee of the corporate defendant handled the plaintiff roughly or pulled her clothes off, but that the plaintiff herself took her coat and hat off and invited a search of them and of her person by the women employees in the privacy of the "ladies room."

At the close of all the evidence, upon motion of the defendants, the court entered a judgment of nonsuit, and the plaintiff appealed, assigning errors.

While ordinarily one in possession of property, either as owner or as agent of the owner, has the right to defend and protect it against aggression, and to use such force as may seem to be reasonably necessary to accomplish this end, *Curlee v. Sales,* 200 N. C., 614, and, if sued for the use of such force, may plead that he laid hands on the aggressor gently, *molliter manus imposuit,* in defense of his possession and property, Blackstone's Com., Bk. III, ch. 8, pp. 120-21, still we think the conflicting evidence in this case raises the question as to whether the defendants used excessive force, under the circumstances, in the protection of their property, and, since this is a question for the jury, *Curlee v. Scales, supra,* and cases there cited, it was error to allow the motion for judgment as of nonsuit.

Reversed.

DEVIN, J., took no part in the consideration or decision of this case.